VICTOR DE GYARFAS, CA Bar No. 171950
 vdegyarfas@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA 94104-1520
TEL: 213.972.4500  FACSIMILE: 213.486.0065

MICHAEL R. HOUSTON, Pro Hac Vice
 mhouston@foley.com
**FOLEY & LARDNER LLP**
321 NORTH CLARK STREET, SUITE 2800
CHICAGO, IL 60654
TEL: 312.832.4500  FAX: 312.832.4700

Attorneys for Plaintiffs H.W.J. DESIGNS FOR AGRIBUSINESS, INC. AND SAMUEL STRAPPING SYSTEMS, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.W.J. DESIGNS FOR AGRIBUSINESS, INC. and SAMUEL STRAPPING SYSTEMS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> RETHCEIF ENTERPRISES, LLC A/K/A RETHCEIF PACKAGING, and L.P. BROWN COMPANY, INC. D/B/A INTERNATIONAL FIBER PACKAGING, <br><br> Defendants. | Case No. 1:17-cv-00272-AWI-SKO <br><br> **STIPULATED ESI PROTOCOL ORDER** |

The parties to this Stipulated ESI Protocol Order have agreed to the terms of this Order.

This protocol describes certain specifications for document production consistent with Fed. R. Civ. P. 26 or 34. It is not intended to supersede or conflict with either of those Rules. Issues, if any, arising on subject matter within the scope of this Order, but not directly addressed in it, shall be governed by those Rules except as otherwise stipulated by the parties under Rule 29 or as addressed by motion as described in Section 8 below.

**1. DEFINITIONS**

Definitions will be construed according to the Federal Rules of Civil Procedure and The Sedona Conference® Glossary: E-Discovery & Digital Information Management (Fourth Edition), which is available at https://thesedonaconference.org/download-pub/3757 (last accessed June 6, 2017).

**2. CUSTODIANS**

The parties will meet and confer to identify their respective custodians and the production priority for them.

**3. DOCUMENT PROCESSING**

3.1 <u>Hidden Data.</u> The parties will, during processing, force on the following:

  i. auto date (absent special circumstances, code information will be provided in place of date);

  ii. track changes (absent special circumstances, the TIFF images will contain all track changes);

  iii. hidden columns or rows (absent special circumstances, noting that hidden columns and/or rows exist will be sufficient);

  iv. hidden text or worksheets; and

  v. comments (absent special circumstances, these should be visible on the TIFF images of the documents).

**4. DATA CULLING**

4.1 <u>Duplicates.</u> The parties will use industry standard MD5Hash or SHA-256 hash values to de-duplicate documents. The parties will apply de-duplication on a family basis. The parties will

de-duplicate within each custodian ("vertical de-duplication") and across custodians ("horizontal de-duplication").

> i. The parties will not de-duplicate loose electronic documents against email attachments;
>
> ii. The parties will not count a document containing handwritten notes, highlighting, or any other markings as a duplicate of a non-marked or annotated version of the same document.

4.2 <u>Date Range.</u> The parties will meet and confer regarding the start date and end date to be applied to limit documents. If any family member falls with the given date range, the entire family will be included. The parties' discussion of date range will include the issue of whether, if any of the fields Date Sent, Date Received, Date Created, Date Last Modified, and/or Date Last Printed fall within the or a specific date range, a document will be included.

4.3 <u>Search Terms.</u> The parties will meet and confer regarding the search terms to be applied to limit documents and the appropriate number of such search terms. If any family member hits on a search term, the entire family will be included. The parties further agree that applying the agreed-upon search terms to a given party's collection of electronically stored information ("ESI") does not by itself satisfy that party's obligations in responding to specific discovery requests; there may be categories of documents requiring collection other than by application of search terms. To the extent possible, parties shall run OCR conversion on non-searchable PDF files and other stand-alone files and email attachments that do not have searchable text in order to make them searchable before running the searches.

4.4 The parties agree that search terms, custodians, and/or date ranges may need to be adjusted or supplemented as discovery proceeds. The parties will meet and confer in a timely fashion regarding such additional search terms, custodians, and/or date ranges.

**5. PRODUCTION**

5.1 <u>Cover Document.</u> The parties will provide a cover document (or email for documents produced via FTP site) with each production containing the following information:

> i. the case name and number;

ii. the piece of media, if appropriate, included in the production with its unique production volume number.

5.2 <u>Media.</u> Any production may be produced via FTP or other secure file transfer site. Otherwise, the parties will deliver each production on a CD, DVD, or USB flash drive using overnight delivery. If a delivery is too large to fit on two CDs, DVDs, or USB flash drives, the production will be delivered via an external hard drive using overnight delivery. The production media for media productions containing material designated under the protective order as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" will be encrypted, with the password provided under separate cover. Encrypted data may be produced in encrypted ZIP files or as Veracrypt volumes. The production media will be labeled with:

i. the producing party's name;

ii. the case name and number;

iii. the production volume; and

iv. the Bates number range.

5.3 <u>Production Format.</u> The parties will produce all documents as tagged image file format ("TIFF") images accompanied with an image load file, a data load file, and document-level searchable text, unless this Order otherwise specifies that certain documents shall be produced in native form.

i. TIFF Image Requirements. The parties will produce all documents as consecutively Bates-stamped (bottom right-hand corner), TIFF images in black-and-white, Group IV, 300 dpi format. JPEGs, PPT, PPTX in color and any hard copy documents in color should be produced in color, and color images shall be produced in JPEG format rather than TIFF format. In addition, if the requesting/receiving party asserts a need, it may obtain color copies of black-and-white documents, unless there is a serious cost issue due to excessively large volume.

1. The parties will name each image file with the unique Bates number of the page of the document in question, followed by the extension "TIF";

     2. File names cannot contain embedded spaces or special characters;

  ii. Data Load File Requirements. The parties will produce a Concordance-compatible, data load file with each production volume. The data load file will contain a header row listing all of the applicable metadata fields listed in Appendix A.

     1. The parties are not obligated to produce metadata from a document if metadata does not exist or if the metadata is not machine extractable; except, the parties will produce custodian metadata for hard-copy documents to the extent that a custodian is reasonably known or can be assigned;

  iii. Extracted and OCR Text Requirements. The parties will provide electronically extracted text for all types of ESI except for MS-Excel spreadsheets. The parties will provide optical character recognition ("OCR") text for documents that do not contain electronically extractable text, for redacted documents, and for hard-copy documents.

     1. The parties will provide document text as separate, document-level text files not embedded in the metadata load file;

     2. The parties will name each text file with the unique Bates number of the first page of the corresponding TIFF, followed by the extension "txt";

5.4 Native Production. The parties will produce MS-Excel, CSV spreadsheets, and MS-PowerPoint files in native form, to the extent such files are possessed by the producing party in native form. The parties will replace the TIFF image with a document placeholder containing a unique Bates number and language sufficient to convey that the document was produced in native form, along with any applicable protective order designation. The text file will contain the extracted text of the native file. Should any TIFF image not be legible, the parties will work together to provide native versions of such documents on a case-by-case basis.

  i. The parties will name each native file with the unique Bates number of the first

page of the corresponding TIFF, followed by the appropriate extension ("xls," "csv," or "ppt");

    ii. The parties will provide a path to each native file in the data load file;

    iii. When redaction is necessary, a redacted full TIFF version may be produced instead

    iv. When documents of file types such as audio files, DWG files, AutoCAD files, Access databases, Microsoft Project files, Log files, and the like cannot be converted to image files or cannot be converted without undue burden and/or expense, such documents may be produced in native format.

5.5 <u>Other Files.</u> The parties will meet and confer to discuss a suitable production format for any document types not addressed herein.

## 6. CONFIDENTIALITY

Confidentiality of documents produced will be designated in accordance with the Stipulated Protective Order entered in the case.

## 7. PRIVILEGE

7.1 <u>Privilege Log.</u> The parties will provide a privilege log for any document withheld in whole or in part (i.e., redacted) based upon a claim of privilege no later than sixty (60) days prior to the close of fact discovery. The parties further agree to meet and confer regarding the production of a privilege log prior to any deposition(s) as necessary. The log will detail the following for each document:

    i. an identification number for documents withheld in whole;

    ii. a Bates number for documents withheld in part (i.e., redacted);

    iii. the document date, to the extent reasonably discernible;

    iv. the author(s) (i.e., from) with an asterisk identifying any legal personnel;

    v. the recipient(s) (i.e., to, cc, and bcc) with an asterisk identifying any legal personnel;

    vi. an identification of any attachments to a document being withheld, accompanied by an indication of where such attachments appear on the privilege log or that such attachments have been produced;

4851-2600-9673
4824-1156-4628.1

       vii.       the basis of the privilege claimed;

       viii.      a description sufficient to allow the receiving party to assess the privilege claim; and

       ix.       a listing of the names of any legal personnel listed on the privilege log and the name of the business entity with which such legal personnel were affiliated as of the time of the withheld communication.

7.2    The parties agree that privileged or work product documents that were prepared, generated, and/or created subsequent to or directly related to the preparation and filing of the complaint, counter-claims, or answers need not be included on a privilege log.

**8.    MISCELLAENOUS**

The parties will meet and confer to resolve any document production disputes arising from or not addressed in this protocol. Agreement to this protocol, and any stipulations on its subject matter pursuant to Fed.R.Civ.P. 29, shall not be construed as a waiver of any rights of any party under applicable law or the right to seek modification or supplementation of this Order by normal motion practice under Civil Local Rules 141.1 and 251. Without limiting the foregoing, agreement to this protocol shall not be construed as a waiver of any party's right to pursue forensic copies of memory storage media or other devices. The provisions of this Order are a stipulation, made by the parties based on their ability to foresee various aspects of ESI discovery at this stage of the case. While it has been entered by the Court to provide the protections intended by such stipulation, it is not the result of an actual adjudication by the Court of any contested issue. Accordingly, the Court's consideration of any motion with respect to this Order shall be *de novo*. Action taken or omitted to be taken based on a good faith, reasonable belief in its propriety under this Order, or due to circumstances outside the control of an alleged violator, shall not be deemed a Contempt of Court.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

4851-2600-9673
4824-1156-4628.1

/s/ Victor de Gyarfas                               Date: November 7, 2017

**FOLEY & LARDNER LLP**

Attorneys for Plaintiff H.W.J. DESIGNS FOR AGRIBUSINESS, INC. and SAMUEL STRAPPING SYSTEMS, INC.



/s/     R. Eric Gaum                                Date: November 7, 2017

**HAHN LOESER & PARKS LLP**

Attorneys for Defendant RETHCEIF ENTERPRISES, LLC a/k/a RETHCEIF PACKAGING



/s/     Steven D. Moore                             Date: November 7, 2017

**KILPATRICK TOWNSEND & STOCKTON LLP**

Attorneys for Defendant L.P. BROWN CO., INC.


## **ORDER**

IT IS SO ORDERED.

Dated:  **November 9, 2017**                    /s/ *Sheila K. Oberto*
                                                UNITED STATES MAGISTRATE JUDGE

# **APPENDIX A**

PROD_BEG
PROD_END
PRODATTACH_BEG
PRODATTACH_END
Confidentiality
Page Count
Document_Type
Email To
Email From
Email CC
Email BCC
Email Subject
Date_Sent
Time_Sent
Date_Received
Time_Received
Custodian
Date_Created
Time_Created
Date_Last_Modified
Time_Last_Modified
Filename
Filesize
MD5 Hash
Title
Doc_Extension
Text Precedence
File Path